# THE STATE OF IOWA:

## DES MOINES, DECEMBER TERM, A. D. 1877.

IN THE THIRTY-SECOND YEAR OF THE STATE.

---

PRESENT:

HON. JAMES G. DAY, CHIEF JUSTICE.
" JAMES H. ROTHROCK, ⎫
" JOSEPH M. BECK, ⎬ JUDGES.
" AUSTIN ADAMS, ⎪
" WILLIAM H. SEEVERS. ⎭

---

## HERRINGTON v. THE DISTRICT TOWNSHIP OF LISTON.

1. **School District:** BOARD OF DIRECTORS: ACTION OF. The concurrence of a majority of the board of directors, when duly assembled, is essential to the performance of a valid act. The assent of the several members separately is not enough, and any action based thereon will not be binding upon the district.

2. ————: LENGTH OF SCHOOL: CONSENT OF SUPERINTENDENT. The board of directors may provide a school for less than twenty-four weeks in the year, with the consent of the county superintendent, and it is not requisite to the validity of their action that such consent shall first be obtained.

3. ———: CONTRACT: RATIFICATION.  Where a teacher had been employed by a sub-director, and after the school had continued for a time the board voted to discontinue the school, paying the teacher a certain designated amount for her services, *held*, that the payment did not constitute a ratification of the contract of hiring, binding the district to pay for the services of the teacher after the time when the directors had voted the school should be discontinued.

*Appeal from Woodbury Circuit Court.*

TUESDAY, SEPTEMBER 18.

ACTION to recover for services in teaching the school in sub-district No. 3, of the defendant District Township.  The service was performed as alleged by the plaintiff in her petition, but the defendant denies all liability to pay for the service, because, as it alleges, the county superintendent of Woodbury county released the directors of said district township from the obligation to maintain a school in said sub-district, and the directors voted against maintaining a school in said sub-district, which was known to the plaintiff; and the contract between her and the sub-director was not approved by the president of the district.  Other facts appear in the opinion.  Trial by jury.  Judgment for plaintiff.  Defendant appeals.

*Pendleton & Wakefield*, for appellant.

*Joy & Wright*, for appellee.

ADAMS, J.—I.  In the sub-district in question the number of scholars was small.  According to the testimony of the president of the district, there were only six scholars between the ages of five and twenty-one, and two or three of them did not wish to attend school

1. SCHOOL district: board of directors: action of.

during the summer months.  At a meeting of the board, held March 27, 1875, an order was passed which is recorded in these words: "On motion of Geo. Chapman we have no school during the coming summer months, in district No. 3.  Motion adopted."  Notwithstanding this order, the sub-director of the sub-district No. 3, Geo. Chapman, employed the plaintiff as teacher for the period of twelve weeks and entered into a writ-

ten contract with her in the usual form. Under this contract she commenced teaching on the 3d day of May, and on the 12th day of May a meeting of the board was held at which a resolution was passed which is in these words: "Resolved that the contract of Lizzie Herrington, now teaching in sub-district No. 3, is not approved, and that the secretary notify her of the same. Motion adopted." In connection therewith a motion was passed, the record of which is as follows: "On motion of J. W. Stowell, the president is authorized to issue to Lizzie Herrington an order for $17.50, for teaching in sub-district No. 3. Motion adopted." Notice of the action of the board was given to the plaintiff. She claims, however, that before that time the contract made between her and the sub-director had been ratified by the board, and to show such ratification she introduced as a witness the sub-director of sub-district No. 3, who made the contract, and offered to show by him that the contract was approved by one Stowell, one of the three directors, who with himself constituted a majority. The defendant objected to the testimony as irrelevant and immaterial, but the court overruled the objection and the witness testified that Stowell told him to tell the plaintiff to teach the school, and that he would accept the contract, and that a meeting of the board should be called. Upon this evidence the court instructed the jury as follows: "If you find from the evidence that two of the sub-directors of the District Township of Liston, to-wit: Mr. Stowell and Mr. Chapman, told the plaintiff that she could continue to teach the school under the contract, and that they would call a meeting to approve the same, this would be a ratification of said contract, and the defendant would be bound thereby." The giving of this instruction is assigned as error.

The question is here presented whether a corporation whose business is transacted by a board of directors can be bound by the assent of a majority of the directors to a contract, expressed otherwise than at a duly convened meeting. We are of the opinion that it cannot. While it is true that a majority of the board will govern in the absence of a provision by statute, or in the articles of incorporation, requiring the concurrence of a greater number, yet their determination is valid only after the

minority have had an opportunity to be heard. A board must act as a unit, and in the manner prescribed. The determination of the members individually is not the determination of the board. In *McCullough v. Moss*, 5 Denio, 577, the court said: "The concurrence of a majority of the board when duly assembled is requisite to constitute a valid act. The assent of the several members separately is not enough." See, also, *Livingston v. Lynch*, 4 Johns. Ch., 596; *Rice & Son v. Plymouth County*, 43 Iowa, 136.

In allowing evidence of what one of the directors said elsewhere than at a meeting of the board, and in instructing the jury as above set forth, we think that the Circuit Court erred.

II. It is claimed, however, by the plaintiff that the contract made between her and the sub-director, Chapman, needed no ratification by the board. Her theory is, that the maintenance of a school during the months in question was necessary to afford the sub-district twenty-four weeks of school in the year, and that the sub-director of sub-district No. 3 had authority by law to employ a teacher, and that the board had no power to impose any restriction upon him in that respect.

2. ——:length of school: consent of superintendent.

The statute upon the subject is section 1727 of the Code, and provides that, "in each sub-district there shall be taught one or more schools, for at least twenty-four weeks in a year, unless the county superintendent shall be satisfied that there is good reason for failure to do so." On the point the court instructed the jury that if they should find that the resolution of March 27, 1875, was made and passed by the board of directors, for the purpose and with the intent to deprive sub-district No. 3 of a school for the twenty-four weeks, provided by law to be taught in a year, such resolution would be illegal, and would not deprive the sub-director of his right to employ a teacher in his sub-district to teach said twenty-four weeks.

The resolution upon its face purports to dispense with a school only for the coming summer months. But, conceding that the board designed thereby to provide a school for less than twenty-four weeks in a year, we think that their action was legal, provided the county superintendent's consent was ob-

tained. We see no way to sustain the instruction given by the Circuit Court and give proper force to the provisions of the section above quoted.

It is urged by plaintiff, however, that although the superintendent's consent in this case was obtained, it should be treated as a nullity because it was not obtained until after the resolution was passed. To this it may be said that there is nothing in the statute providing that his consent shall be obtained in advance of any resolution of the board upon the subject. The board could have passed the resolution again after the superintendent's consent was obtained, but it would have been a mere matter of form, and of no substantial benefit to any one. In the absence, therefore, of a statute requiring that the superintendent's consent shall be obtained in advance, we cannot regard it as necessary.

III. The plaintiff further claims that the contract was distinctly ratified by the directors acting as a board. It appears

3. ——: contract: ratification. that on the 12th day of May, 1875, at a meeting of the board a motion was passed to pay the plaintiff $17.50, for the time she had taught. The court instructed the jury in these words: "If you find that the resolution passed by the defendant's board of directors, offering to give the plaintiff $17.50, was passed for the sole purpose of making a compromise with said plaintiff, and thereby prevent litigation, this would not make the plaintiff's contract valid and binding on the defendant, if it was otherwise illegal. But if said resolution was passed and the offer made for the purpose of paying her for the time she had already taught under said contract, and not for the purpose of a compromise to save litigation, this would be a ratification of said contract." In the last sentence of the foregoing instruction we think that the court erred. The evidence tended to show that the motion for the payment. of the $17.50 was not made by way of compromise, but to compensate the plaintiff for what teaching she had done. Now, her understanding was that the teaching was done under the contract. The understanding of the board was that it was not done under the contract, because in connection with the motion to pay the plaintiff $17.50, they passed a resolution that the

plaintiff's contract is not approved, and that the secretary notify her of the same. To hold that they might be regarded as ratifying by implication what they expressly repudiated would be placing a construction upon their action which it will not bear.

Some other errors are assigned, but we think that they are substantially disposed of by the principles above enunciated, and do not, we think, require a separate consideration.

REVERSED.