KATE GRESSLY, Guardian of JERRY SCHAFFER, Insane, Appellant, v. HAMILTON COUNTY, IOWA, and H. I. THOMPSON, Sheriff of said County, Appellees.

Insane persons: PUBLIC SUPPORT: REIMBURSEMENT: ENFORCEMENT OF
1 CLAIM. Claims in favor of a county for the support of an insane person are to be collected the same as any other claim; and a

personal judgment against the insane person in an action in which the guardian appeared and made no objection to the form of proceeding is valid, at least to the extent of being an allowance of the claim against the guardian and estate represented.

**Same.** A stipulation upon which a judgment is rendered merges
2   in the judgment; and neither the same nor a provision in the decree that it is not intended as an order directing the sale of property, will prevent the issuance of an execution and sale thereunder of property of an insane person, which is charged by law with the support of such person and for which the judgment was rendered.

**Same.** There may be a sale on execution of the property of an
3   insane person to satisfy a judgment for the support of such person in a hospital for the insane, as well as by an order for the guardian to pay the same, which may be enforced by attachment for contempt.

*Appeal from Hamilton District Court.*— HON. J. H. RICH-
ARD, Judge.

MONDAY, DECEMBER 16, 1907.

SUIT in equity to enjoin the sale of certain real estate on execution.   Decree dismissing plaintiff's petition, and she appeals.— *Affirmed.*

*D. C. Chase* and *William Whisler,* for appellant.

*J. M. Blake* and *Wesley Martin,* for appellees.

DEEMER, J.— Jerry Schaffer is an inmate of one of the hospitals for the insane; and plaintiff, Kate Gressly, is his guardian.   Some time in the year 1905 Hamilton county commenced an action against Schaffer and his guardian to recover the expenses of his care and keep in the hospital, alleging that there was sufficient property in the estate of Schaffer, and in the charge of his guardian, to pay the amount plaintiff had expended.   Appearance to that action was made by the guardian, and, pursuant to stipulation, the case was settled, and a judgment rendered, which, so far as

material reads as follows: " It is therefore ordered and adjudged that the plaintiff Hamilton county have judgment against Jerry Schaffer, insane, for the sum of two thousand dollars and the costs of this action; that Kate Gressly, his guardian, is ordered and directed to pay said judgment and costs from any money or property in her hands or under her control belonging to the said Jerry Schaffer. This is not intended as an order directing a sale of property by the guardian." The stipulation upon which it was rendered reads: " The court shall enter judgment against Jerry Schaffer in the sum of two thousand dollars, and make an order directing Kate Gressly, his guardian, to pay the same from any money or property of the said Jerry Schaffer in her hands or under her control." Not being paid, execution issued on the judgment which was placed in the hands of defendant Thompson, as sheriff, and he levied upon certain real estate belonging to Schaffer, and had advertised the same for sale, when this action was brought to restrain the said sale. The petition in this action among other things recites: " That the said land is not subject to execution aforesaid; that it is incumbent on the plaintiff Hamilton county to make a showing as to the property in the hands of the guardian, and, if found sufficient, to then have an order for the sale of sufficient property on such order to pay the said judgment; but that no summary process can issue directly against the insane person or his property, and is contrary to law." To this petition defendants filed a general demurrer, and this demurrer was sustained, and judgment was rendered against plaintiff for costs.

Plaintiff contends, first, that no judgment may properly be entered against an insane person whose property is in the

1. INSANE PERSONS: public support: reimbursement: enforcement of claim.

hands of a guardian; second, that if such judgment may be rendered it cannot be enforced by execution; and, third, that if neither of these propositions be true the judgment rendered in the original suit against the insane person and his guardian

cannot by reason of the provisions thereof be enforced by execution. By section 2297 of the Code it is provided, in substance, that the auditors of the several counties are authorized and empowered to collect from the property of patients in insane hospitals any sum paid by the county on their behalf. Under this section it has been held that collection is to be made of the amount paid in the same manner as of any other claim: by action, judgment, and execution. See *Thode v. Spoffard*, 65 Iowa, 303. Even were there no such holding we should be constrained to find that the judgment rendered in the original case is good, for the reason that the guardian appeared in the action in which it was rendered, and did not object to the form of the proceedings, or move to transfer it to the probate or other court. It was good at least to the extent of being an allowance of the claim against the guardian and the estate which she represented. The judgment, however, was a personal one against an insane person, who was properly represented in the action by his guardian, and no question is made of the validity thereof. It seems to be the general rule that judgments may properly be rendered against insane persons. *Walker v. Clay*, 21 Ala. 797; *Stigers v. Bent*, 50 Md. 214 (33 Am. Rep. 317); *Woods v. Brown*, 93 Ind. 164 (47 Am. Rep. 369); *King v. Robinson*, 33 Me. 114 (54 Am. Dec. 614); *Pollock v. Horn*, 13 Wash. 626 (43 Pac. 885, 52 Am. St. Rep. 66); *White v. Hinton*, 3 Wyo. 753 (30 Pac. 953, 17 L. R. A. 66). In the instant case the insane person was represented by his guardian, who appeared for him in the district court, and there can be no question of its validity.

II. But it is argued that the judgment cannot be enforced by execution. Reliance for this is placed upon the terms of the stipulation and of the judgment itself. What-
2. SAME.    ever the stipulation may say upon this proposition, it became merged in the judgment, and, as no appeal was taken therefrom, it must stand and be given force according to its provisions. It is true that the

judgment declares that it was not intended as an order directing the sale of property by the guardian; but this is quite a different proposition from an order directing that it should not be enforced by sale upon execution.  There is, to our minds, nothing in the judgment itself which forbids the issuance of an execution and a sale thereunder of the property of the insane person whose property the statute in effect declares is liable for the expenses for which the judgment was rendered.

III.  This brings us to the last and only other question in the case, which is, may a judgment against an insane person be enforced by execution sale?  There seems to be some conflict in the cases from other states upon this proposition, but the weight of authority appears to favor an affirmative answer.  See, as supporting that view, *Thatcher v. Dinsmore,* 5 Mass. 299 (4 Am. Dec. 61); *In re Clark,* 1 Ch. 336 (78 Law T. Rep. (N. S.) 275); *Allison v. Taylor,* 36 Ky. 87 (32 Am. Dec. 68); *Morgan v. Hoyt,* 69 Ill. 489; *Adriance v. Brooks,* 13 Tex. 279; *Pollock v. Horn,* 13 Wash. 626 (43 Pac. 885, 52 Am. St. Rep. 66); Freeman on Executions (3d Ed.) section 131, and cases cited.  Contra, *McNees v. Thompson,* 5 Bush (Ky.) 686; *Saunders v. Mitchell,* 61 Miss. 321; *Adams v. Thomas,* 81 N. C. 296; Id., 83 N. C. 521.  The only reason for denying the right of execution is that the property is already in *custodia legis,* and the court should direct its officers to make payment of the judgment, and see that its orders are enforced by contempt proceedings or otherwise. This, of course, is generally the orderly and proper way to dispose of property in the custody of the court.  But the Legislature may undoubtedly provide for the enforcement of such claims as were there presented by ordinary processes. Whatever reasons may exist for holding that an execution may not be levied upon property of an insane person, the question is settled for this state, we think, in *Thode v. Spoffard, supra,* wherein it is said:  " Counties are authorized

3. SAME.

to collect from the property of patients any sum paid by the county in their behalf; the collection is to be made like any other claim, by action, judgment, and execution; and there is no lien until it is obtained by the judgment of the court." In *Flock v. Wyatt*, 49 Iowa, 466, it is said: "Probate jurisdiction over the person and property of insane persons does not exclude the jurisdiction of a court of law in an action against an insane person with reference to his property." If this last proposition be correct, it follows that the execution was properly issued, for there was a personal judgment against Schaffer; and it is provided in section 3954 of the Code "that judgments requiring the payment of money are to be enforced by execution. Obedience to those requiring the performance of any other act is to be coerced by attachment as for contempt." Plaintiff in the main case had two remedies: First, an order upon the guardian to pay which could be enforced by attachment for contempt; and, second, an execution for the sale of the property of the defendant in his judgment. This is pointed out in *Flock v. Wyatt, supra.* There is no hardship in this rule. If the guardian has money or personal property in her hands wherewith to pay the judgment, she may easily acquire it and thus stop the sale. If she has neither, then a sale of the real estate must be had; and as the judgment is a lien upon the land, there is nothing to be gained from having a guardian's rather than a sheriff's sale. ·The Legislature has seen fit to make the property of an insane person liable for the expenses of his keep in an insane hospital, and, to our minds, has thereby made it the subject of execution sale, although the insane person may be under guardianship. None of the cases cited by appellant's counsel run counter to this view. Indeed, the one most relied upon by them — *Flock v. Wyatt* — seems to support our conclusion.

The decree is right, and it is *affirmed.*